**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DAVID TIFFANY,<br><br>   Plaintiff<br><br>v.<br><br>QUINTEN BYRNE, et. al.<br><br>   Defendants | Case No.: 3:16-cv-00612-MMD-WGC<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF No. 16 |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is defendant Kelly Belanger's motion for summary judgment. (ECF Nos. 16, 16-1 to 16-6.) Plaintiff filed a response. (ECF No. 27.) Belanger filed a reply. (ECF No. 30.)

After a thorough review, it is recommended that Belanger's motion be granted.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 4.) The events giving rise to this action took place while Plaintiff was housed at Lovelock Correctional Center (LCC). (*Id.*) Kelly Belanger is the only defendant. (Screening Order, ECF No. 3.)

On screening, the court allowed Plaintiff to proceed with a single claim in Count III for violation of his Fourteenth Amendment due process rights related to his classification to administrative segregation (ad-seg). (ECF No. 3.)

Specifically, the complaint alleges that on September 14, 2015, Plaintiff was issued a disciplinary notice charging him with engaging in sexually stimulating activities with his cellmate. Plaintiff had a disciplinary hearing and was found guilty of the charge and was sanctioned to six months in disciplinary segregation. He completed his disciplinary segregation term on March 10, 2016, and was placed into ad-seg that same day. He avers that he was not told the reason he was placed into ad-seg; was not provided the required 72-hour review hearing; and was never given a full classification committee hearing. In addition, he alleges that conditions in ad-seg were an atypical hardship compared to ordinary prison life because he was permitted only one hour of yard time approximately three times a week, was only allowed to shower once every 48 hours, and the remaining time was locked down, whereas in general population inmates received fifteen hours of tier-time a day, six hours of yard time a day, six hours of gym time a day, educational programs, religious services, unlimited showers, unlimited canteen and the ability to participate in sporting events.

Belanger moves for summary judgment, arguing: Plaintiff's due process rights were not violated because he was given the appropriate classification hearing and periodic reviews of his ad-seg placement; and alternatively, Belanger is entitled to qualified immunity.

## II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-50. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine

3

dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmoving party is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50 (citations omitted).

### III. DISCUSSION

**A. Administrative Segregation & Due Process**

The Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To invoke its protections, an inmate "must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Once the plaintiff has established one of these interests is at stake, the

court's analysis turns to whether the inmate suffered a denial of adequate procedural protections. *See Biggs v. Terhune*, 334 F.3d 910, 913 (9th Cir. 2003) (citations omitted).

"A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty'[.]" *Wilkinson*, 545 U.S. at 221 (citing *Vitek v. Jones*, 445 U.S. 480, 493-94 (1980) (liberty interest in avoiding involuntary psychiatric treatment and transfer to mental institution); *Wolff v. McDonnell*, 418 U.S. 539, 556-58 (1974) (liberty interest in avoiding withdrawal of state-created system of good-time credits)). "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Id*. (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976).

Courts have uniformly held that placement in ad-seg for non-punitive reasons does not give rise to a liberty interest from the Constitution itself. *See Chappell v. Mandeville*, 706 F.3d 1052, 1063 (9th Cir. 2013) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). As the Supreme Court explained, ad-seg, which is "used to protect the prisoner's safety, to protect other inmates from a particular prisoner, to break up potentially disruptive groups of inmates, or simply to await later classification or transfer" "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983).

"[A] liberty interest in avoiding particular conditions of confinement *may* arise from state policies or regulations, subject to the important limitations set forth in *Sandin v. Conner*, 515 U.S. 472 (1995)." *Wilkinson,* 545 U.S. at 222 (emphasis added).

In *Sandin*, the inmate brought a procedural due process claim regarding placement in segregated confinement for 30 days in connection with a disciplinary proceeding. *Sandin* rejected the previously employed approach for evaluating whether there was a state-created

5

liberty interest by looking at the mandatory language of prison regulations, and instead directed that it is more important to look at the "nature of the deprivation." *Sandin*, 515 U.S. at 481. In this regard, *Sandin* held that liberty interests created by the state are generally limited to "freedom from restraints which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 483-84. In *Sandin,* the Supreme Court concluded the inmate had no liberty interest protecting against the placement in segregated confinement for 30 days as a result of a disciplinary proceeding because it did not "present a dramatic departure from the basic conditions of [the inmate's] sentence." *Id*. at 485.

In sum, to establish a due process claim related to placement in ad-seg, an inmate must therefore show that the classification resulted in conditions that amount to an "atypical and significant hardship in relation to the ordinary incidents of prison life." The "atypical and significant hardship" test is the focus of the court's inquiry, "even in the face of relevant prison regulations." *See Chappell*, 706 F.3d at 1064.

Assuming the inmate demonstrates a protected liberty interest is implicated, the court will then analyze whether the inmate received the process he was due.  In the context of placement in segregated housing for non-punitive reasons, the inmate must be given notice of the reason for segregation and be provided, within a reasonable time after such placement, with an informal, non-adversary review of the evidence justifying the decision to segregate the inmate. *See Hewitt v. Helms*, 459 U.S. 460, 476 (1983), *abrogated in part on other grounds in Sandin v. Conner*, 515 U.S. 472 (1995); *Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir. 1986), *abrogated in part on other grounds in Sandin v. Conner*, 515 U.S. 472 (1995). Unlike a disciplinary

6

proceeding, an inmate is not entitled to "detailed written notice of charges, representation of counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation." *Toussaint*, 801 F.2d at 1100-01. After being placed in segregation, prison officials must periodically review the initial placement. *See Hewitt*, 459 U.S. at 477, n. 9 (noting this does not necessarily require the submission of any additional evidence or statements).

**B. Analysis**

In September 2015, Plaintiff was housed at LCC, and on September 10, 2015, was charged with a major disciplinary infraction for engaging in sexually stimulating activities with his cellmate. (ECF No. 16 at 2, ECF No. 16-1 at 3, ECF No. 16-3 at 17; ECF No. 27 at 3-4.) Plaintiff was found guilty of the charge and sanctioned to six months in disciplinary segregation (to start on October 10, 2015). (ECF No. 16 at 2-3, ECF No. 16-3 at 21; ECF No. 27 at 4.) Due to good behavior, Plaintiff received a 30-day time cut for his disciplinary segregation sanction. (ECF No. 16 at 3, ECF No. 16-3 at 8; ECF No. 27 at 4.) On March 10, 2016, the disciplinary segregation sanction expired. (ECF No. 16 at 3, ECF No. 16-3 at 7; ECF No. 27 at 4.) That same day, Plaintiff was transferred to ad-seg. (ECF No. 16 at 3, ECF No. 16-3 at 7; ECF No. 27 at 4.) Belanger performed the ad-seg classification hearing that day. (ECF No. 16-2 at 2-3, ECF No. 16-3 at 7; ECF No. 27 at 4.) Plaintiff was scheduled for a transfer to another institution. (ECF No. 16-2 at 2-3; ECF No. 27 at 4.) Plaintiff received monthly ad-seg reviews. (ECF No. 16 at 3, ECF No. 16-2 at 3, ECF No. 16-3 at 2-5 (ad-seg review April 8, 2016, May 11, 2016, June 13, 2016, July 11, 2016, ); ECF No. 27 at 4, 5.) On July 28, 2016, Plaintiff was transferred to general population housing at NNCC. (ECF No. 16 at 3, ECF No. 16-2 at 3; ECF No. 27 at 4, 5.)

Ad-seg within NDOC is governed by Administrative Regulation (AR) 507. (ECF No. 16-4; ECF No. 27 at 5.) Ad-seg is not to be used for punishment, but for protection of an inmate with safety concerns in the general population. (*Id.*) Inmates assigned to ad-seg should receive an initial classification hearing within 72 hours. (*Id.*) Inmates continuing in ad-seg should receive classification reviews every 30 days after the initial classification hearing. (*Id.*)

Belanger does not address whether Plaintiff faced conditions imposing an "atypical and significant" hardship in ad-seg so as to implicate a state-created liberty interest, but instead argues that Plaintiff received all the process he was due because he was given an informal non-adversary hearing upon his assignment to ad-seg, and periodic reviews thereafter. (ECF No. 16 at 5.)

Plaintiff disputes that it was necessary to place him in ad seg, or that he had an enemy on the LCC general population yard. Plaintiff also disputes that he became upset and refused to sign the classification paperwork. Plaintiff contends he did not receive his initial classification for 96 hours or more, on September 16, 2016[1], and not within the 72 hours required by AR 507. Plaintiff also states that on September 16, 2015 (presumably referring to March), he was not provided with a three-committee-member hearing, and only he and Belanger were present. (ECF No. 27 at 15.) He contends that in the reviews, the forms are pre-signed and so he did not receive an impartial hearing. (ECF No. 27 at 8-9.)

Belanger states, and the documentation confirms, that Plaintiff was transferred to ad-seg from disciplinary segregation pending a transfer because he was "not able to return to the LCC/GP yard." (ECF No. 16-3 at 7.) Plaintiff's case notes from March 3, 2016, state that he had

---

[1] The court assumes Plaintiff is referring to March and not September because he admits he was not placed in ad-seg until March 10, 2016.

one "separatee" on the LCC/GP yard—his cellmate whom he was accused of engaging with sexually stimulating activity with—and when he was out of disciplinary segregation he would have to be submitted for a transfer. (ECF No. 16-2 at 2.) This is also reflected in the case notes on March 10, 2016. (*Id*. at 2, 3.)

The ad-seg notice of classification hearing is dated March 10, 2016, and advises Plaintiff he would appear before the classification committee on March 15, 2016. (ECF No. 16-3 at 7.) The document indicates that Plaintiff refused to sign the classification notice form. (*Id*.) Plaintiff's case notes from that date state that Plaintiff became upset and refused to sign the notice, and he would be submitted for transfer. (ECF No. 16-2 at 2.)

Plaintiff does not dispute that he was advised of the ad-seg classification by Belanger on March 10, 2016. In fact, Plaintiff's response affirmatively states that Belanger "performed the ad. seg. Classification hearing that date." (ECF No. 27 at 4.) Therefore, it appears Plaintiff received notice of his placement in ad-seg and the reason on March 10, 2016.

The records reflect that Plaintiff's request to be classified from ad-seg to general population was considered on March 15, 2016, and his request was denied, indicating he would remain in ad-seg pending his transfer. (ECF No. 16-3 at 6.) His case notes on March 16, 2016 for "classification/due process" state that he was read his rights and indicated he understood, and it was determined he would remain in ad-seg pending a transfer due to a "separatee" issue at LCC. (ECF No. 16-2 at 3.) Even if Plaintiff did not have a formal classification hearing on March 10, 2016, the March 16, 2016 hearing took place within six days of his placement in ad-seg. While it might be outside the 72-hour time frame in AR 507, the court finds it was still held within a reasonable time under *Hewitt* and *Toussaint*.

While Plaintiff may dispute whether he had an "enemy" at LCC, prison officials deemed he had a "separatee" at LCC (his cellmate that he was found guilty of engaging in sexually stimulating activity with) which required Plaintiff's transfer to another institution. This is a valid, non-punitive reason for placement in segregation.

Lastly, insofar as the reviews are concerned, Plaintiff does not dispute he received periodic reviews of his classification status prior to his transfer to NNCC. The records reflect he received reviews approximately every 30 days until he was transferred. He seems to argue that he was not given a three-member panel to present his views to for the reviews, but this is not required under *Hewitt* and *Toussaint*.

In conclusion, the court finds that assuming (without deciding) that Plaintiff has a protected liberty interest with respect to his placement in ad-seg, he received all the process he was due and summary judgment should be granted in favor of Belanger. In light of this, the court need not address Belanger's qualified immunity argument.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING** Belanger's motion for summary judgment and entering judgment in his favor.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: December 12, 2018

*William G. Cobb*

William G. Cobb
United States Magistrate Judge